JOSEPH M. DRUMRIGHT, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] Under an indictment for carrying a negro out of a county, the beginning of the offence is the commencement of the carrying, and the end of it is the crossing of the county line; and all that is done from the beginning to the end, and all that is said, is admissible in evidence as a part of the *res gestœ.*

[2.] The sayings of other persons are admissible against a party when it affirmatively appears that he assented to them by his silence, or in some other way.

[3.] When the defendant justifies his act by showing the consent of a person whom he alleges to be the true owner, he cannot show the fact by *affidavits* of that person asserting a *claim* to the negro.

[4.] The defendant may justify his act in carrying away a negro from the adverse peaceable and legally acquired possession of another, by showing the consent of the true owner.

[5.] He cannot justify himself by the consent of one who he *thinks* is the owner, unless he be either the true owner, or some other person who *truly* has, and not merely *professes* to have, authority to grant such consent.

Misdemeanor, in Fulton Superior Court. Tried before Judge BULL, April Term, 1859.

All the facts necessary to a full understanding of the points adjudicated in the case, appear in the following opinion of the Court.

SIMPSON; OVERBY & BLECKLEY; and GLENN, for plaintiff in error.

Solicitor General T. L. COOPER, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

[1.] We think the evidence offered by the defendant, showing his sayings while engaged in the act of removing the negro beyond the limits of the county, ought to have been admitted as a part of the *res gestæ.* He was indicted under the Act of 1856 (see *Acts of* 1855–'6, *page* 264) for carrying a negro out of the county of Fulton without the consent of the owner or other person having authority to give such consent. The offence began when he commenced to carry the negro, and it ended only when he crossed the county line. What he did from the beginning to the end, was the act whose criminality was under investigation, and all that he said about the act while he was performing it, constitutes a part of it.

[2.] We think the sayings of other persons in the presence of the defendant were properly admitted against him. What a party himself says, is admissible against him, and what is said by others and is *heard* and goes *uncontradicted* by him, is equally so. But in the case of sayings by other persons, it ought to be made affirmatively to appear that he *heard* the sayings, and that he assented to them either expressly, or by his silence, or by his treatment of them in some way showing *assent.* His assent to them is the thing which makes them admissible against him, and that assent must be shown in some way, before the sayings can be admitted.

[3.] We are not prepared to say there was error in the rejection of the affidavits of Mrs. King and Mrs. McGarr. Whoever may have been the owner of the negro, the fact could not be legally proven by *affidavits*—it could be proven (so far as the proof was derived from witnesses) only by such witnesses as were on the stand, subject to cross-examination. Whether it was admissible to show a *claim* of title by Mrs. King (whose consent the defendant had) in contradistinc-

tion from a true title in her, by way of showing the probable *bona fides* of the defendant, will be considered when I come to the charge requested on that subject by the defendant, and refused by the Court.

[4.] We think all of the charges requested by the defendant ought to have been given, except the last one. The crime consists in carrying away the negro *without the consent* of whom? The *owner*, or the person having authority to give such concent. The ownership is the gist of the inquiry. The Court below seemed to assume that peaceable and legally acquired possession stands in the place of ownership. True, such possession is *prima facie* title, and so is naked possession *prima facie* title, but neither is equivalent to ownership, and either may be rebutted by showing that the true ownership or title, is elsewhere. We do not think the statute intends to punish a man who carries away *his own* negro, although he may carry him away from the adverse, peaceable and legally acquired possession of one who having this sort of possession, may yet have no *right* of possession. The hirer of a negro, for instance, has peaceable and legally acquired possession, and he may retain him in adverse possession after the period of the hiring has expired, but he would have no *right* so to retain him, and I apprehend the true owner might remove the negro without incurring the high penalty of this statute. It matters not from whose possession the negro is carried, provided he is carried either by the true owner, or by the consent of the true owner, or by the consent of any other person having authority to grant such consent. There are many such "other persons," including the owner's bailees of various kinds, and including also, I should say, him who may be in adverse, peaceable and legally acquired possession under a *bona fide claim* of title. The statute protects the party who carries away, provided he has the consent of either the true owner (a word which defines itself) or of any other person having authority to grant such consent, leaving that

Drumright vs. The State.

"other person" to be determined by the general law of property and possession. A reasonable doubt on either of these points, is a reasonable doubt as to the *guilt*, and ought to acquit. We think too that if Mrs. King had a good title, it was not impaired by the administrator's adverse sale, she causing her claim to be proclaimed at the sale as the evidence shows she did.

[5.] The last charge requested by the defendant involves the question how far is a person carrying away a negro, protected by *appearances* as contradistinguished from the truth of the case? This branch of the case was but slightly argued, and none of us, I believe, was prepared to pronounce upon it with clearness and satisfaction to ourselves. But we were all inclined to the opinion that the charge was properly refused. With myself, subsequent reflection has somewhat strengthened that opinion. If a man carries a negro away from one who has an adverse, peaceable possession, and who therefore, is the apparent owner, he must take the *hazard* of the true ownership. If he disregards the apparent ownership, he must get the consent of the true owner at his peril. If he sets at naught those patent appearances which arise from peaceable, adverse possession, he cannot protect himself by other appearances; if he chooses to act in such a case, he does so at the peril of having the consent of the true owner. It is needless to add, that the charge which was given, is in conflict with the principles already announced.

Judgment reversed.