THE STATE OF OHIO, APPELLEE, *v.* GATTON, APPELLANT.

(Decided May 12, 1938.)

*Mr. Raymond O. Morgan,* prosecuting attorney, for appellee.

*Mr. Edwin S. Wertz* and *Mr. William H. H. Wertz,* for appellant.

STEVENS, P. J.   The defendant was charged by affidavit with violation of Section 6296-30, General Code, by operating a motor vehicle upon a public highway in Wayne county, Ohio, while in a state of intoxication, or under the influence of alcohol, narcotics or opiates.

Trial to a jury resulted in the return of a verdict of guilty, and from the judgment entered upon that verdict, appeal on questions of law lodges the case in this court for review.

Numerous errors are assigned, principal of which are:

1.   Error in the admission and rejection of evidence.

-2.   Error in the charge of the court.

3.   That the verdict and judgment are manifestly against the weight of the evidence.

4.   Misconduct of the prosecuting attorney in argument.

The first assignment of error has to do principally with evidence, admitted by the court, bearing upon the following situation: After defendant's arrest and confinement in jail, request was made of him by a deputy sheriff that he submit to having either a blood test or a urinalysis made, to determine the amount of alcohol in his system.   This the defendant refused to do. At the trial, evidence was admitted, over the objection of defendant, showing the request to submit to such examination, and defendant's refusal to accede to that request; and in argument by the prosecutor the jury was urged to consider defendant's refusal to submit to either examination as an inference of the guilt of the defendant.

It is argued by defendant that the admission of such evidence over his objection, and the reference to it in

argument, contravened the constitutional right of defendant as defined by Section 10 of Article I of the Constitution of Ohio, by requiring the defendant to testify against himself.

That section of the Constitution as it now exists, in part provides:

"No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be the subject of comment by counsel. * * *"

The Constitution of 1802, Section 11, Article VIII, in part provided:

"That in all criminal prosecutions, the accused * * * shall not be compelled to give evidence against himself * * *."

The Constitution of 1851, Section 10, Article I, in part provided:

"* * * nor shall any person be compelled, in any criminal case, to be a witness against himself * * *."

The question thus presented concerns the admissibility of evidence of the request made of defendant, and his refusal to accede to that request. If such evidence was admissible, then, of course, there was no error in the prosecutor's comment thereon. If it was inadmissible, the comment of the prosecutor aggravated the error of its admission.

We are required to inquire into and ascertain what is meant by the provision of the Constitution "No person shall be compelled, in any criminal case, to be a witness against himself." Did the court, when it permitted the state to show that demand had been made upon defendant to submit to examination, and defendant's refusal to so submit, compel the defendant to be a witness against himself?

Under the title "Self-Crimination," 1 Greenleaf on Evidence (16 Ed.), 615, Section 469e, the following is contained:

"The scope of the privilege, in history and in prin-

ciple, includes only the process of testifying, by word of mouth or in writing, i. e. the process of disclosure by utterance. It has no application to such physical, evidential circumstances as may exist on the witness' body or about his person. The privilege does not rest on the extreme notion that a guilty person is entitled to conceal as much as he can of the evidence of his crime; but on the notion that he should not be made to confess it out of his own mouth. Nevertheless, in the last generation a false and sentimental tenderness for the guilty accused has created a tendency in some quarters to extend the privilege in ways unimagined by those who laid its foundations; and the question is now often raised whether the privilege does not protect an accused person from the inspection or search or exhibition of his person. In the great majority of jurisdictions this extension has received no sanction; for example, the accused may be compelled to stand up in court for identification; a physician may be sent to examine him, while in jail, as to his mental condition; a measurement of the accused's feet, for the purpose of identifying footprints, may be taken; the accused may be compelled to place his foot in tracks for the purpose of noting the correspondence.''

In 4 Wigmore on Evidence (2 Ed.), under the chapter ''Privilege against Self-Incrimination'' and the subheading ''Form of Disclosure Protected,'' Section 2263, the following appears:

''In the interpretation of the principle, nothing turns upon the variations of wording in the constitutional clauses; this much is conceded * * *. It is therefore immaterial that the witness is protected by one Constitution from 'testifying,' or by another from 'furnishing evidence,' or by another from 'giving evidence,' or by still another from 'being a witness.' These various phrasings have a common conception, in respect to the *form* of the protected disclosure. What is that conception?

"Looking back at the history of the privilege * * * and the spirit of the struggle by which its establishment came about, the object of the protection seems plain. It is the employment of legal process to *extract from the person's own lips* an admission of his guilt, which will thus take the place of other evidence."

In this connection we have examined many cases, a few of which are: *State* v. *Graham,* 74 N. C., 646, 21 Am. Rep., 493; *Walker* v. *State,* 7 Tex. Crim. App., 245, 32 Am. Rep., 595; *People* v. *Campbell,* 160 Mich., 108, 125 N. W., 42; *O'Brien* v. *State,* 125 Ind., 38, 25 N. E., 137; and 16 A. L. R., 370, annotation at page 371.

It will be observed in the instant case that the evidence offered was not required to be given by the defendant himself, but was given by the deputy sheriff and the doctor called by the deputy to make the examination of defendant. We are unable to observe any merit in the defendant's claim that the introduction of such evidence violated his constitutional rights, and we believe, and hold, that the constitutional inhibition against self-crimination relates only, as stated by Greenleaf, to disclosure by utterance. No such disclosure was required of defendant in this case.

The evidence offered was admissible, and the right of the prosecutor to comment thereon, within reasonable limits, invaded none of the defendant's constitutional rights.

There has been an increasing tendency in recent years upon the part of courts of many jurisdictions to extend the scope of the self-incrimination constitutional provisions to entirely unwarranted lengths. Modern-day transportation, which enables criminals to travel with great rapidity from one part of a state to another, or from one state to another state, together with improvements in lethal instruments, has made the path of the law-enforcement officer exceedingly rough; and

it seems to the members of this court to be high time to discontinue such an attitude toward those accused of criminal offenses, and to secure to them such rights as are clearly guaranteed by constitutional provisions, but no more. Maudlin sentimentality in favor of those accused of crime should not be encouraged.

On the subject of the weight of the evidence, we are of the opinion that the verdict and judgment in this case are not manifestly against the weight of the evidence. We find no error prejudicial to the substantial rights of the defendant in the charge of the trial court, or in the other errors assigned.

The judgment will be affirmed.

*Judgment affirmed.*

WASHBURN and DOYLE, JJ., concur.