WEBB, Solicitor-General, *v.* ALEXANDER *et al.*

No. 15892.   JULY 10, 1947.

*Ralph H. Pharr, W. S. Northcutt,* and *Durwood T. Pye,* for plaintiff.

*James A. Branch* and *Thomas B. Branch Jr.,* for defendants.

438

HEAD, Justice. (After stating the foregoing facts.) ■ The basic question presented here is whether or not the solicitor-general is authorized to institute and prosecute a case of this character.

In addition to an assignment of error on the general ground that the judgment sustaining the motion to dismiss the petition is contrary to law, the plaintiff in error makes two special assignments of error. In his first assignment, he contends that section 20 of the act of 1939 (Ga. L. 1939, p. 593) makes the acts and conduct of the defendants complained of in the petition as amended a public nuisance, and provides for such violation to be subject to abatement as a public nuisance under the laws of Georgia.

Section 20 of the act of 1939 does make every violation of the terms of that act a nuisance, and provides that such continuing nuisance may be "subject to abatement as a nuisance as provided by the laws of this State."

Section 21 of this act provides as follows: "The authority herein given to the county authorities under the terms and conditions of this act may be enforced by the county, or proper county authority, by injunction or otherwise. This authority is cumulative and is not to be construed as curtailing the right of any person, firm, or corporation, resident, property owner or other persons, of bringing any proper action for the enforcement of this act or of such rules and regulations as may be promulgated by county authorities in pursuance of this act."

The act of 1939 superseded a previous zoning statute relating to Fulton County (Ga. L. 1937-38, Ex. Sess., pp. 819-823). The latter act states that it will supersede the previous law upon the adoption of the comprehensive plan for zoning set forth in the 1939 statute. In section 5 of the former act, it is specifically provided that any violation of the orders of the board of commissioners in pursuance of this act "is hereby declared to be a nuisance, and it is hereby made the duty of the solicitor-general of the circuit in which Fulton County is located to prosecute all persons violating the provisions of this act. This remedy is cumulative of other remedies provided by law for the abatement of nuisances. Said solicitor may proceed by prosecution of the guilty persons or by action to abate a nuisance or by injunction or otherwise, as he may see fit."

. The provision contained in section 5, relating to the duty and authority of the solicitor-general, was entirely omitted from the subsequent act of 1939. No mention is made of the solicitor-general in the latter act, but rather a provision is made for enforcement of the terms and conditions of the act "by the county, or proper county authority, by injunction or otherwise." Section 14 of the 1939 act provides: "The zoning regulations here authorized and adopted by said county authorities shall be administered by the inspector of buildings and/or some other designated official under the rules and regulations of the Board of Zoning Appeals."

Since it must be presumed that the legislature in enacting the 1939 act was familiar with the 1937-38 act, it necessarily follows that in omitting any reference to the solicitor-general in the latter act it was the legislative intent to withdraw any authority which may have been expressly given over actions to abate nuisances of this particular character. We do not express any opinion as to the duty or responsibility which may have been placed on the solicitor-general by the 1937-38 act, but only note that, whatever that power may have been, the legislature did not see fit to expressly continue it in effect in the later enactment of 1939. We therefore conclude that the solicitor-general is not authorized to abate nuisances under the express terms of the 1939 act.

■ In the second special assignment of error, the plaintiff contends that the Code, § 72-202, authorizes the solicitor-general to institute and prosecute this case. This contention is to the effect that, even though the Zoning Act of 1939 did not expressly make a violation of its provisions a public nuisance so as to authorize the solicitor-general to bring abatement proceedings, nevertheless this officer is given such authority under the general provisions of § 72-202.

Under the Code, § 72-202, the solicitor-general is authorized by law to proceed for the public to abate or enjoin a public nuisance. The Code, § 72-102, defines public and private nuisances as follows: "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals." Not every nuisance coming within the definition of a nuisance as given in the Code, § 72-101, amounts to such

a public nuisance as may be abated and prevented by a suit brought by the solicitor-general under § 72-202. The facts alleged must show the nuisance complained of to be of a public character and one which damages all persons who come within the sphere of its operation.

This makes it necessary for us to consider whether the violation of a zoning ordinance relating to a particular county constitutes a public nuisance so as to authorize the solicitor-general to act on behalf of the citizens of the State.

We recognize that all citizens of a county are interested in having the zoning laws of their particular locality obeyed, and it may also be conceded that a violation of such zoning measures constitutes a nuisance in the broad sense of that term. However, the basic question still remains as to the type of nuisance which has been created by an infraction of these laws. Since the 1939 zoning statute does not expressly make a violation of its provisions a "public nuisance," can we properly hold that every violation of a zoning law relating to a particular county constitutes such a public nuisance as would make it mandatory on the solicitor-general, a State officer, to institute abatement proceedings?

The fact that all citizens are interested in having the laws enforced is not sufficient, without more, to warrant calling every infraction of a zoning law a public nuisance. If the rule were otherwise, then every infringement or infraction of a law would necessarily constitute a public nuisance regardless of the degree of annoyance or inconvenience suffered by the public in general. In order to state a cause of action for the abatement of a public nuisance, it is necessary for the pleader to show that all persons who come within the sphere of the operation of a nuisance are damaged, although its effect may vary on the individuals. The Code, § 72-102, in defining a public nuisance, certainly requires the petition to show more than a mere infraction of the local law.

This court has held that certain violations of criminal laws of the State amount to public nuisances. It has been held that the maintenance of a gaming place and the operation of a lewd house both constitute public nuisances and may be enjoined as such by action of the solicitor-general of the circuit in which such acts take place. *Gullatt* v. *State,* 169 *Ga.* 538 (150 S. E. 825); *Brindle* v.

*Copeland,* 145 *Ga.* 398 (89 S. E. 332). Likewise, it has been held by this court that the illegal sale of liquor constitutes a public nuisance and may be abated by process instituted by the solicitor-general on behalf of the State. *Lofton* v. *Collins,* 117 *Ga.* 434 (43 S. E. 708, 61 L. R. A. 150). There are other cases relating to public nuisances which were properly brought by the solicitor-general, but the decisions cited above serve to illustrate the principle of these cases.

On the other hand, this court has held, in effect, on many occasions that a simple violation of some law without more does not constitute a public nuisance. In *State* v. *Ball Investment Co.,* 191 *Ga.* 382 (12 S. E. 2d, 574), it was shown that a defendant was violating the law by loaning money at usurious rates of interest. This alleged infraction of the law, however, was insufficient to make the acts complained of a public nuisance so as to authorize the solicitor-general to proceed on behalf of the State with abatement proceedings.

In *Dean* v. *State,* 151 *Ga.* 371 (106 S. E. 792, 40 A. L. R. 1132), the solicitor-general sought to enjoin Dean, a chiropractor, from practicing his profession without having obtained a license from the State Board of Medical Examiners. The solicitor-general contended that such a violation of the law amounted to a public nuisance. This court held that: "The mere fact that the plaintiff in error in practicing his profession without a license may be guilty of a misdemeanor will not authorize a court of equity to enjoin him from practicing his profession. If the medical acts of this State are applicable to the plaintiff in error, he is amenable to criminal prosecution. Unless the legislature sees fit to extend the jurisdiction of equity or to enlarge the category of public nuisances (conceding the power of the legislature so to do), equity will not enjoin the plaintiff in error from practicing his profession simply because in so doing he is violating the penal laws of the State (conceding the validity of the medical acts, as construed and applied by the chancellor)."

In *Southeastern Pipe-Line Co.* v. *Garrett,* 192 *Ga.* 827 (16 S. E. 2d, 753), where the solicitor-general sought to enjoin the laying of a pipe-line underneath public highways, this court held: "Any encroachment upon a public street or highway is a purpresture; and if the public use is impeded or rendered less commodious, such

encroachment is generally not only a purpresture, but also technically a public nuisance, regardless of the degree of interference with the common enjoyment. . . By the great weight of authority, it is not true that every purpresture is a public nuisance. It may or may not be such, according to the particular facts. Although the two may coexist, either may exist without the other. The rule both in reason and by authority is, that, unless the public sustain or may sustain some degree of inconvenience or annoyance in the use of a public highway or street or other public property, there is no public nuisance."

The petition in the present case is lacking in allegations which show how or in what manner the operation of a second filling station on the premises will damage those members of the public who come within the sphere of its operation. It is entirely probable that while the individuals in the immediate proximity of the filling station would object to an extension of this business, yet persons residing a block or two away might welcome the convenience afforded by such an enterprise. This illustrates the fact that, since the violation of a zoning ordinance does not create a public nuisance, it is necessary for the pleader to set forth facts which show that such violation does constitute a public nuisance. This court, in *Cooley* v. *Enzor,* 190 *Ga.* 290 (9 S. E. 2d, 277), held that "the erection and operation of a gasoline filling station is not a nuisance merely because located in a residential section." See also *Wilson* v. *Evans Hotel Co.,* 188 *Ga.* 498, 500 (4 S. E. 2d, 155, 124 A. L. R. 373). While *Cooley* v. *Enzor,* supra, was decided on an action instituted prior to the effective date of the zoning laws in DeKalb County, it nevertheless clearly and forcibly decided that a filling station is not a nuisance per se.

In the present case, the petitioner has not shown how or in what manner the public of Fulton County will be affected if the defendants are permitted to place a metal tank and pumps on the property where an existing filling station is presently being operated. The petition can not be reasonably construed to show that the tank or tanks in question will be operated in a dangerous manner, or that such operation will necessarily become a public nuisance per accidens. The allegation in the petition as to the public nuisance of the acts complained of is a mere conclusion, unsubstantiated by

pleaded facts. Since there are no allegations which show that the public will sustain or may sustain some degree of inconvenience or annoyance, or that the gasoline tanks are calculated to produce a dangerous situation, we must hold that the petition failed to state a cause of action authorizing the solicitor-general to proceed with the case for the abatement of a public nuisance.

While the solicitor-general is not authorized to bring proceedings in the present instance, the General Assembly has expressly provided in section 21 of the 1939 act that "the terms and conditions of this act may be enforced by the county, or proper county authority, by injunction or otherwise. This authority is cumulative and is not to be construed as curtailing the right of any person, firm, or corporation, resident, property-owner or other persons, of bringing any proper action for the enforcement of this act or of such rules and regulations as may be promulgated by county authorities in pursuance of this act." It seems that the General Assembly has provided ample authority for the enforcement of the zoning laws of Fulton County without placing an additional burden and responsibility on the solicitor-general of this judicial circuit.

Conceivably there are instances in which facts could be alleged to show that the violation of a zoning law is a public nuisance, but no such allegations are made in the petition now before the court. It therefore follows that the solicitor-general was without authority to institute the present suit.

*Judgment affirmed. All the Justices concur.*