## 46784. JOHNSON v. THE STATE.

Evans, Judge. The defendant was tried and convicted under an accusation charging him with the misdemeanor offense of operating a motor vehicle while under the influence of intoxicants. A motion for new trial was thereafter filed, amended, and after a hearing, overruled. The appeal is from the judgment of conviction and sentence and also the overruling of defendant's motion for new trial. The enumerations of error are to: 1. Overruling the motion for new trial on the general grounds; 2. Permitting a witness for the State to testify over objection that the defendant did not take an intoximeter test after his arrest, thereby giving the statute requiring such test an unconstitutional application, because no person shall be compelled to give testimony tending in any manner to incriminate himself under the State and Federal Constitutions; and 3. Denial of a motion for mistrial made after the court interrupted defendant's counsel during his final summation, and instructed the jury as to certain phases of the Georgia law in regard to speed limit, driving to the left of the center line of a public street, and the placing of right of way signs on public streets. It was contended that said interruption was prejudicial to the defendant. *Held:*

1. In order to convict one for operating a motor vehicle under the influence of intoxicants it must be shown (1) that he was under the influence of intoxicants, and (2)

that he was so affected thereby as to make it less safe to operate such motor vehicle than it would be if he were not affected by such intoxicants. The evidence was sufficient to support the verdict in that a police officer testified that defendant was under the influence of intoxicants and was therefore an unsafe driver, in his opinion. There is no merit in the general grounds of the motion for new trial.

2. While our State and Federal Constitutions do not allow self-incriminating statements in evidence, over the objection of defendant, the results of properly administered breatholizer or intoximeter tests have not yet been placed in the category of an incriminating statement. This is perhaps because the law authorizes the individual citizen to take or refuse such tests, at peril of losing his driver's license. See 1968 amendment to the Uniform Traffic Act as to driving on highways which authorizes the use of said tests (Ga. L. 1968, pp. 448-455). And while we find no Georgia statute or decision dealing with the question, our sister state of Florida has made it very plain that it is illegal to admit in evidence testimony showing the refusal of a defendant to take said tests (Gay v. City of Orlando (Fla.) 202 S2d 896). This case discusses two Federal decisions bearing on this question: Griffin v. California, 380 U. S. 609 (85 SC 1229, 14 LE2d 106), and Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908). The ruling of the Griffin case, supra, was that the prosecutor in a State criminal trial could not comment to the jury upon a defendant's failure to testify as to matters which he can reasonably be expected to deny or explain because of facts within his knowledge and that the court could not comment as to the accused's silence as evidence of guilt, citing Malloy v. Hogan, 378 U. S. 1 (84 SC 1489, 12 LE2d 653). The refusal to take such tests is not relevant to the question of guilt or innocence although the statute itself authorizes the results to be allowed in evidence and creates a presumption in certain situations. It has likewise been held in this

court that the prosecutor is not permitted to refer to the fact that the defendant has not made a statement, although he may comment on the failure of the accused to produce rebuttal testimony of evidence introduced by the State. See *Saffold v. State,* 11 Ga. App. 329 (75 SE 338). In *Dennis v. State,* 226 Ga. 341 (175 SE2d 17) the Supreme Court, while holding a similar statute in regard to weight limitations upon the highway constitutional, has held that the operator of the vehicle does not forego his constitutional protection against self-incrimination. At page 343 we find the following: "He merely breaches the condition upon which his right to operate the motor vehicle is predicated and the right can be terminated for a period of not more than 90 days. This does not violate his constitutional protection against self-incrimination." The defendant here did not knowingly waive his constitutional protections against self-incrimination but on the contrary, insisted upon it both by not taking the test and again at the trial by objecting to the introduction in evidence of the fact that he refused to take the test. The court erred in allowing the officer to testify that defendant was offered the test and refused it, as a part of the circumstances which took place in the presence of the officer at the particular time. The enumeration of error complaining of allowance of this testimony is meritorious and requires the grant of a new trial.

3. Following an objection of the solicitor to certain argument of counsel for the accused the court made a statement to the jury as to the application of the laws of the State within the city limits of Brunswick, to which counsel objected and moved for mistrial based on the court's intervention in the argument of counsel for defendant. The objection was not to the substance of the statement but to the court's intervention at that time. The appellant has cited no authority for the granting of the motion for mistrial and we find no harmful error in the court making the statement to the jury following colloquy by the court and counsel, although no ruling was

made directly as to the objection made to the argument. Finding no error, the court did not err in denying the motion for mistrial, and the error enumerated thereon is not meritorious.

*Judgment reversed. Bell, C. J., Jordan, P. J., Deen, Quillian and Clark, JJ, concur. Hall, P. J., Eberhardt and Pannell, JJ, dissent.*

SUBMITTED JANUARY 3, 1972—DECIDED MARCH 2, 1972.

*William R. Killian,* for appellant.

DEEN, Judge, concurring. I concur with the majority opinion of Judge Evans and would like to make certain other comments in support of this position.

Several compelling reasons urge that the question contained in the dissent of Judge Eberhardt (should evidence of failure to take the test be refused if the results, where it is made, are admissible?) be answered in the negative. In the first place, the foreign authority cited is contrary to the thrust of Georgia law; in the second, it is contrary to the Georgia Constitution; in the third, it would allow inadmissible evidence of other unlawful acts.

What is the purpose of admitting such evidence? None at all except as a covert manner of informing the jury that the defendant, having refused the test, knew he was guilty and was unwilling to give evidence against himself. If the inference is correct, the Constitution protects him. But the inference may well be incorrect, since the results of blood and breath tests administered by local authorities are by no means 100% accurate and many people would refuse them for this reason alone.

The real question is, if the defendant refuses to take the breath test may he be forced to do so? Obviously not. One may not seize the defendant's person and place him outside the window where the criminal was seen (*Aiken v. State,* 16 Ga. App. 848 (2) (86 SE 1076)) or seize his foot and place it in the criminal's track (*Elder v. State,* 143 Ga. 363 (1) (85 SE 97)) or force him to use his breath either to answer incriminating questions (Miranda v. Arizona, 384 U. S. 436

(86 SC 1602, 16 LE2d 694, 10 ALR3d 974)), or to provide the police with incriminating chemicals. Since he cannot be forced to take the test, and since the only result of evidence that he refused to take it is to create the inference that if he had taken it the result would have been positive, we allow evidence of no-test to substitute for evidence of positive-test, contrary to the basic rule of criminal justice, which is that the defendant may indeed stand mute, and the burden is on the State to *prove* him guilty.

Except for this inference, which is exactly the one the law says should not be drawn, the refusal to take the test is of no probative value whatever. It is, however, under *Code Ann.* § 68-1625.1 (b) an independent illegal act carrying its own penalty—suspension of driver's license. On that issue and on that issue alone is testimony of refusal to take the test competent evidence.

EBERHARDT, Judge, dissenting. I dissent as to Division 2 of the majority opinion and from the judgment of reversal. It is my view that the evidence as to the defendant's refusal to take the breatholizer test for determining the alcoholic content of the blood was properly admitted.

*Statutory history.* The Uniform Traffic Act was adopted at the November-December 1953 Session of the General Assembly (Ga. L. 1953, Nov. Sess., p. 556) and § 47 (which became *Code Ann.* § 68-1625) made it an offense to operate or drive a motor vehicle while under the influence of intoxicating beverages, and provided that "in any criminal prosecution for a violation" thereof the alcoholic content of the accused's blood to specified portions should raise rebuttable presumptions as to his condition. It gave the accused the right to demand the blood test, provided that it should be made at his expense, not to exceed $10, and further provided that "[n]othing in this Act shall be construed as requiring any person to take such examination against his wishes," and that "the failure of such arrested person to demand such a test or to consent to such a test shall not be admitted in evidence at the trial of such person."

The limitation on the cost of the test, assessable to the

accused, was raised to $20 by Ga. L. 1966, pp. 70, 71.

In 1968 the General Assembly, by Ga. L. 1968, p. 448 et seq., amended the Uniform Traffic Act by striking *in its entirety* § 47 (which was carried in the Annotated Code as § 68-1625) and substituted a new § 47 (which is now found in the pocket part of the Code as *Code Ann.* §§ 68-1625 and 68-1625.1). Section 47 (a) re-enacted the provision making it a criminal offense to operate or drive a motor vehicle while under the influence of intoxicants, and subsection (b) provides that "upon the trial of any person *accused of violating subsection (a)* of this section, evidence as to the amount of alcohol in the defendant's blood at the time of the alleged offense as shown by a chemical analysis of the defendant's blood or breath shall be admissible as competent evidence bearing upon the question of whether the person was under the influence of intoxicating liquor," and that the results of the tests should give rise to specified presumptions. (Emphasis supplied.) It also provides for release to the accused of the results of the tests upon request from him or his attorney. Driving while under the influence of drugs was also made an offense. Provisions were included for suspending the driver's license of the accused upon conviction.

Section 47A (§ 68-1625.1 in the Code) provides that all who drive or operate motor vehicles upon public roads or highways are deemed to have given consent to the tests, and that "[n]o person shall be required to take a blood test if he objects thereto, and *in such case such person shall be given a breath test*"[1] (emphasis supplied), and further provides that upon refusal to take the test his driver's license, after hearing, shall be suspended.

Thus, provisions theretofore included which prohibited the admission in evidence of the failure of the accused to demand a test, or of his refusal to consent thereto, were

---

[1] Each type of test is designed to ascertain the alcoholic content of the blood, and thus the state of sobriety or of intoxication, and each is thus a blood test.

repealed, and were not reenacted or carried forward in the new Act. It is not now in the law, and we must conclude that this change in the law was deliberately made. Where the General Assembly repeals an Act and adopts another, omitting from the latter provisions that were carried in the former, it must be presumed that it was intended to withdraw authority extended under the omitted portions and these are no longer to be given effect. *Webb v. Alexander,* 202 Ga. 436 (43 SE2d 668).

Neither this court nor the Supreme Court has had occasion to consider whether, under the law as it now stands, the evidence is admissible. The question is one of first impression.

First, let us note that while the accused may refuse a blood test, in that event "he shall be given a breath test." The breath test is mandatory. The courts have held that he is excused if he suffers from a disease making it impossible to complete the breath test, such as, for example, emphysema (*Burson v. Collier,* 226 Ga. 427 (175 SE2d 660); *Department of Public Safety v. Orr,* 122 Ga. App. 439 (177 SE2d 164)), the rationale being that the law never requires the impossible of anybody. *Kelly v. Locke,* 186 Ga. 620, 626 (198 SE 754). While the law does not require the impossible of him, it does not afford one who is able to do so the right to refuse to take the breath test. This defendant made no assertions of his inability to take it, or of any unreliability of the test, or as to the type of the test—he simply refused to take it, according to the testimony of the officers.

Our sister states of Idaho and Wisconsin have dealt with this matter. In Idaho the statute went so far as to provide that "A defendant in a criminal action or proceeding to which he is a party, is not, without his consent, a competent witness for or against himself. His neglect or refusal to give such consent shall not in any manner prejudice him nor be used against him on the trial or proceeding." The Supreme Court of that State, in State v. Bock, 80 Idaho 296 (328 P2d 1065) held that this provision of the statute "deals only with the right of the defendant to choose whether or not he shall become a witness. . . It deals with the defend-

ant only as a witness, and guards against testimonial compulsion, not against 'real' evidence." Consequently, the court concluded that it did not apply to evidence of the *defendant's conduct,* before the trial, in refusing to submit to the test, and noted that "It is significant that our statute contains no such provision [prohibiting the admission into evidence of his refusal to take the test]. *The courts should not add a limitation which the legislature has not seen fit to impose."* (Emphasis supplied.) "This court can neither rewrite the law nor hedge it about with restrictions not included in it." *St. Paul Fire &c. Ins. Co. v. Miniweather,* 119 Ga. App. 617 (3) (168 SE2d 341). A similar result was reached upon similar reasoning by the Supreme Court of Wisconsin in City of Barron v. Covey, 271 Wis. 10 (72 NW2d 387). We regard it as significant that our present statute carries no such provision, and the significance is even greater because the prior statute did, as we have shown. It should not now be added by us.

*Constitutional issue.* In Schmerber v. California, 384 U. S. 757 (86 SC 1826, 16 LE2d 908), the Supreme Court of the United States foreclosed the issue as to whether an accused's right under the Fifth Amendment against self-crimination is violated by requiring him to take the blood test, using the very basis of the Act of 1968 that one who uses the public roads and highways upon which to drive a motor vehicle impliedly consents to the tests when the arresting officer has reasonable cause to believe that the accused was under the influence of intoxicants or of drugs. We regard the decision of our Supreme Court in *Dennis v. State,* 226 Ga. 341 (175 SE2d 17), upholding the law requiring that one operating a truck on the public highway permit a weighing to determine whether the truck is overloaded, to be in line with the holding in Schmerber. While the court did observe that a driver "may elect to refuse to drive upon the scales," it did not hold that evidence of his refusal would not be admissible against him.

If it does not violate his right against self-crimination to have the test made and upon the trial to admit evidence as

to the results, which show him to have been under the influence, how can we conclude that it does so simply to admit evidence that he was offered the test, as the law requires be done, and that he declined to take it? In the first instance positive evidence is admitted showing his guilt, while in the latter the evidence can do no more than raise an inference that he may have refused to take the test because of his consciousness of guilt. Evidence of the accused's failure or refusal to take the test is not violative of his constitutional rights. People v. Conterno, 170 Cal. App. 2d 817 (339 P2d 968); State v. Munroe, 22 Conn. Supp. 321 (171 A2d 419); Alldredge v. State, 239 Ind. 256 (156 NE2d 888); State v. Benson, 230 Iowa 1168 (300 NW 275); State v. Kaufman, 211 La. 517 (30 S2d 337); State v. Gatton, 60 Ohio App. 192 (20 NE2d 265); State v. Durrant, 55 Del. 510 (188 A2d 526); Gardner v. Commonwealth, 195 Va. 945 (81 SE2d 614). There are others. See Anno. 16 LE2d 1332.

In Gardner v. Commonwealth, 195 Va. 945, 951, supra, the Supreme Court of Appeals of Virginia, holding the evidence as to the refusal of the accused to take the test to be admissible and to violate no constitutional rights, observed that in so refusing "The accused is not testifying, nor is he compelled thereby to take the stand to refute the accusation. The Commonwealth's witness merely details the behavior or conduct of the accused under the circumstances. No one would seriously contend that the Commonwealth could not show that an accused was seen running from the place where a crime had been committed, and yet in a broad sense in doing so he would be giving evidence against himself."

*Circumstances surrounding the arrest.* It has long been the law of this State that *all of the circumstances* connected with the arrest are properly admitted for consideration by the jury. For example, it is proper to show that the defendant, charged with murder, was drunk (*Wooten v. State,* 224 Ga. 106 (5) (160 SE2d 403); *Robinson v. State,* 130 Ga. 361 (3) (60 SE 1005)), or flight by the accused after the crime

was committed, his possession of arms, and whether he resisted when arrested. *Wayne v. State,* 56 Ga. 114, 119. It has been held proper to admit evidence that the accused remained silent in the face of an accusation. "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission. When a statement tending to incriminate a person is made in his presence and he remains silent, the mere fact that he is under arrest or is in custody at the time will not render evidence of such statement and silence inadmissible as an implied admission." *Emmett v. State,* 195 Ga. 517 (2) (25 SE2d 9). Accord: *Kalb v. State,* 195 Ga. 544 (25 SE2d 24); *Walker v. State,* 197 Ga. 221 (28 SE2d 656); *Drumright v. State,* 29 Ga. 430; *Creel v. State,* 216 Ga. 233 (3b) (115 SE2d 552).

In State v. Benson, 230 Iowa 1168, supra, the court was dealing with the contention that evidence as to a refusal to take the alcohol blood test was inadmissible and, holding against this contention, said: "It is proper to show the defendant's conduct, demeanor and statements (not merely self-serving), whether oral or written, his attitude and relations toward the crime, if there was one. These are circumstances that may be shown. Their weight is for the jury to determine. *The fact that the defendant declined to submit to a blood test is such a circumstance. . .* The jury may consider it." (Emphasis supplied.) Cf. 8 Wigmore on Evidence, 3rd Ed. § 2268, p. 388, 1953 pocket supp. p. 128.

"Evidence as to the time when and the place where arrested, the manner of the arrest, how the accused was armed, and whether he resisted, and *all the circumstances connected with the arrest,* are proper matters to be submitted to the jury to be weighed by them for what they are worth." *Bridges v. State,* 227 Ga. 24 (3) (178 SE2d 861). And see *Henderson v. State,* 227 Ga. 68 (7b) (179 SE2d 76).

It is inescapable that the accused's refusal to take the breatholater test was a circumstance connected with the arrest and evidence thereof was properly admitted.

*Waiver.* Even if it were within the province of the de-

fendant to object to this evidence on the grounds urged, it appears that he has waived his objection. When the State's evidence closed the defendant voluntarily took the stand and joined the issue by asserting *"I hadn't been offered the blood test at all."* If the evidence had been ruled out, this statement immediately made it admissible and it could have been reintroduced to contradict this statement (*Morris v. State,* 177 Ga. 106, 115 (169 SE 495)), but since the evidence had already been admitted it would have been useless to tender the same thing again. The law does not require the doing of a useless thing. *Johnson v. State,* 215 Ga. 839 (5) (114 SE2d 35).

The refusal to take the test is not to be equated with the failure of the accused to take the stand and make an unsworn statement or testify in his own behalf. We agree readily that it is improper for the court or the State's counsel to make reference to that. But that is not a circumstance connected with the arrest—it is something which happens in the course of the trial itself.

*Probative value.* Does the refusal to take the test have probative value? We think it does, just as does evidence of flight. While it is not proof of an admission of guilt, and refusal of it may have been occasioned by a fear that the test results would not be accurate, yet if that be the case the defendant is at liberty to say so to the jury, and it is for them to conclude whether that be the case, or, on the other hand, whether it reveals a consciousness of guilt (*Prather v. State,* 116 Ga. App. 696 (1) (158 SE2d 291)), because he was really afraid that the test would reveal him to be more intoxicated than the officers observed. "Actions speak louder than words," and the jury should be allowed to consider both what he did and what he says. We are supported in this view by People v. McGinnis, 123 Cal. App. 2d 945 (267 P2d 458); People v. Conterno, 170 Cal. App. 2d 817, supra; State v. Bock, 80 Idaho 296, supra; State v. Tryon, 145 Conn. 304 (142 A2d 54); City of Westerville v. Cunningham, 15 Ohio St. 2d 121 (239 NE2d 40); Gardner v. Commonwealth, 195 Va. 945, supra.

We can find no error in admitting the evidence, and since

there was ample evidence, even otherwise, to sustain the conviction it should be affirmed.

I am authorized to state that Presiding Judge Hall and Judge Pannell agree with this dissent.