## 66392. WESSELS v. THE STATE.

Pope, Judge.

On April 24, 1982 Donald Louis Wessels was arrested and charged with various vehicular offenses, among them driving under the influence of alcohol. At the time of his arrest, defendant refused to submit to a chemical test used to determine the alcohol content of his blood. At trial it was stipulated that defendant refused such test after he had been duly informed of his rights under the Implied Consent Statute, OCGA § 40-5-55 (Code Ann. § 68B-306). In his opening argument, the solicitor told the jury that defendant had refused the arresting officer's request for submission to the chemical test. Counsel for defendant objected to the solicitor's remark and moved for mistrial. The trial court overruled this motion and defendant was convicted of D.U.I. and sentenced to 12 months imprisonment. Following the denial of his motion for new trial, defendant brings the present appeal.

1. Defendant enumerates as error the denial of his motion for mistrial arguing in support thereof that the admission of his refusal to submit to the chemical test violated his constitutional right against self-incrimination as guaranteed by Art. I, Sec. I, Par. XIII of the Constitution of Georgia of 1976 (Code Ann. § 2-113) (now Art. I, Sec. I, Par. XVI, Ga. Const. 1983 (Code Ann. § 2-116)). We note initially that the United States Supreme Court has recently addressed the identical issue on the federal level as raised under the Fifth Amendment right against self-incrimination. In South Dakota v. Neville, —— U. S. —— (103 SC 916, 74 LE2d 748, 759) (1983), the court held "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination.

Applied to the facts of the present appeal, the holding in South Dakota v. Neville is, of course, dispositive of the question. Although defendant correctly argues that the Georgia Constitution affords more protection from self-incrimination than does the United States Constitution, the initial inquiry must be whether he had been compelled or forced to produce the evidence at issue. Our state law differentiates between compelling a criminal defendant to perform an act resulting in production of incriminating evidence and compelling him to submit to a procedure designed to extract such evidence. The former produces inadmissible evidence; the latter is admissible. See *Creamer v. State,* 229 Ga. 511 (3) (192 SE2d 350) (1972); *State v. Armstead,* 152 Ga. App. 56 (262 SE2d 233) (1979). We find however, that where the defendant has been properly informed

of his rights, the *refusal to submit* to a blood-alcohol test need not be placed in either of the categories described above. We are in agreement with the Court in South Dakota v. Neville that a criminal defendant's refusal to submit to the test in this situation is not the product of coercion, compulsion or force; rather it is the choice between options provided for by statute. See OCGA § 40-5-55 (Code Ann. § 68B-306). This is not "a case where the State has subtly coerced [defendant] into choosing the option it had no right to compel, rather than offering a true choice. To the contrary, the State wants [defendant] to choose to take the test, for the inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test." South Dakota v. Neville, supra at 759.

2. Defendant next contends that evidence of his refusal to submit to the blood-alcohol test is inadmissible because it is irrelevant to the question of guilt or innocence under *Johnson v. State,* 125 Ga. App. 607 (2) (188 SE2d 416) (1972). For the following reasons, however, we find it necessary to overrule the holding in Division 2 of *Johnson.* In the intervening eleven years since the opinion in *Johnson,* the danger to the public safety posed by the drunk driver has been repeatedly and intensely brought to the awareness of the citizens of Georgia, through the media as well as through recently enacted statutes providing for stricter enforcement of D.U.I. laws and harsher punishment for their infraction. See Ga. L. 1983, p. 1000, Sections 12 and 13 (effective September 1, 1983 and now codified as OCGA §§ 40-6-391 and 391.1 (Code Ann. §§ 68A-902 and 68A-202.2)). As a result, the public is generally aware of the standard procedures attendant to arrest for this offense, i.e., that chemical tests are administered by law enforcement authorities to ascertain the suspect's level of intoxication. It logically follows that in a trial for the offense of D.U.I., where the state produces no evidence of such test results, the inference raised in the minds of the jurors is that the defendant submitted to the test which resulted in a reading lower than that deemed to show intoxication. To the extent of negation of this inference, evidence of refusal to take the test is indeed relevant and admissible. Further, the defendant may in the course of trial offer explanation for such refusal.

Additionally, we believe our holding, that a refusal to submit to a blood-alcohol test is admissible, to be supported by the legislative history of the applicable statute. The Uniform Traffic Act was adopted by the General Assembly in 1953 (Ga. L. 1953, Nov. Sess., p. 556), with Section 47 governing persons driving under the influence of intoxicating liquor or drugs. Pertaining to the criminal prosecution for the offense of D.U.I., Section 47 (b) provided for certain

rebuttable presumptions to arise from results of the defendant's blood-alcohol test with the following proviso: "[T]he failure of such arrested person to . . . consent to such a test shall not be admitted in evidence in the trial of such person. . . ." The Act was amended in 1968 by striking Section 47 in its entirety and substituting a new Section 47. See Ga. L. 1968, p. 448, Section 1. No provision for, nor reference to, the inadmissibility of a refusal to submit to a blood-alcohol test was included in the 1968 re-enactment of Section 47 or in the new Section 47A which was added within the same legislation. Since it must be presumed that the General Assembly was familiar with Section 47 of the 1953 Act when, in the 1968 Act, it struck Section 47 completely and re-enacted a new Section 47 and Section 47A, it necessarily follows that the omission of the provision for the inadmissibility of the refusal shows the legislative intent to remove the statutory bar to the introduction of this evidence at trial. See *Webb v. Alexander,* 202 Ga. 436 (1) (43 SE2d 668) (1947); *Kirkland v. Lee,* 160 Ga. App. 446 (1) (287 SE2d 365) (1981). In fact, no mention was made regarding the evidentiary status of the refusal to submit to the test until the General Assembly addressed it in its most recent session. See Ga. L. 1983, p. 1000, Section 14(c). The statute is codified at OCGA § 40-6-392 (c) (Code Ann. § 68A-902.1) and provides: "In any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him."[1]

For the reasons presented above, the trial court did not err in admitting evidence of appellant's refusal to submit to the blood-alcohol test.

*Judgment affirmed. Shulman, C. J., Deen, P. J., Quillian, P. J., McMurray, P. J., Banke and Birdsong, JJ., concur. Carley and Sognier, JJ., concur in the judgment only.*

DECIDED NOVEMBER 23, 1983 —
REHEARING DENIED DECEMBER 8, 1983 — 

*Larry W. Yarbrough,* for appellant.
*Herbert A. Rivers, Solicitor, Gentry Shelnutt, Assistant Solicitor,* for appellee.
*Michael J. Bowers, Attorney General, Marion O. Gordon, John C. Walden, Senior Assistant Attorneys General, Victoria H. Soto,*

---

[1] While the September 1, 1983 effective date of the statute precludes its application to the present appeal, it is helpful in defining the legislative intent.

*Assistant Attorney General,* amici curiae.