# Richmond

JAMES E. GARDNER v. COMMONWEALTH OF VIRGINIA.

May 3, 1954.

Record No. 4205.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith
and Whittle, JJ.

The opinion states the case.

*George E. Allen; Allen, Allen, Allen & Allen; Frank A. S. Wright;* and *Gambill, Minor & Wright,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C.J., delivered the opinion of the court.

James E. Gardner, hereinafter designated defendant, seeks by this writ of error a reversal of a judgment convicting him of driving an automobile while under the influence of intoxicants in violation of Code section 18-75.

The Attorney General moved to dismiss the writ of error because defendant's brief does not contain a statement of facts as required by rule 5:12:1(c), Rules of the Supreme Court of Appeals of Virginia. We have repeatedly said that compliance with this rule is of immeasuable help to the Court in deciding the questions presented, and have warned that a failure to comply with it might result in the denial or a dismissal of the appeal or writ of error. *Norfolk Southern Ry. Co.* v. *Lassiter,* 193 Va. 360,. 68 S. E. (2d) 641; *Southwest Virginia Hospitals, Inc.* v. *James C. Lipps,* 193 Va. 191, 68 S. E. (2d) 82; *James* v. *Commonwealth,* 192 Va. 713, 66 S. E. (2d) 513; *Matthews* v. *W. T. Freeman Co.,* 191 Va. 385, 60 S. E. (2d) 909; *Hall* v. *Hall,* 181 Va. 67, 23 S. E. (2d) 810. We are fully conscious of the fact that such a dismissal is drastic to the litigants affected, but we must insist on orderly procedure

in order to dispose expeditiously of the many matters presented to us. However, two of the three questions raised in this case are questions of law and are not necessarily controlled by the facts. The printed record is short and contains only thirty-six printed pages of testimony. The evidence is in sharp conflict and on the first trial there was a hung jury. Under these circumstances we overrule the motion, but repeat with emphasis the warning heretofore given that, unless there is substantial compliance with the rule, the appeal or writ of error may be refused or dismissed without considering the questions presented.

Defendant's first contention is that the trial court over his objection impaneled only seven jurors to try the case, thereby limiting him to only one peremptory challenge. His contention is that under Code section 8-200, as amended in 1952, a jury of eleven should have been impaneled, thus giving him and the Commonwealth the right to three peremptory challenges of jurors.

Prior to the 1952 amendment section 8-200 provided that: "In every case the plaintiff and defendant may each challenge one juror peremptorily when the jury consists either of five or of seven." The amendment struck out the word "one" before juror and in lieu thereof inserted the word "three" jurors.

Defendant argues that the section before and after the amendment applies to juries in criminal cases as well as juries in civil cases.

The code commission of 1950 divided section 6000 of the 1919 code into several sections and made the last sentence of that section, without change, section 8-200. Section 6000 of the 1919 code was a part of chapter 249 and applied only to juries in civil cases. Section 8-200 is a part of Title 8, chapter 11, of the 1950 code, and likewise applies to juries in civil cases. Chapter 195 of the 1919 code, of which section 4927 is a part, applies to juries in criminal cases, and Title 19, chapter 8, Article 3, of the 1950 code, of which sections 19-181 and 19-183 are parts, applies to

juries in criminal cases. Code section 19-181 is as follows:

"Jurors in misdemeanor cases.—Jurors drawn or summoned under chapter 11 of Title 8 shall be jurors as well for the trial of cases of misdemeanor as of civil cases, and all the provisions of that chapter except the provisions of §§ 8-193 and 8-202 and that provision of § 8-204 which directs the compensation and mileage of jurors to be paid out of the county or corporation levy (which excepted provisions shall apply exclusively to jurors and juries in civil cases) shall extend as well to jurors and juries in cases of misdemeanor as to jurors and juries in civil cases. And §§ 8-174, 8-175, 8-178, 8-194, 8-199 to 8-201, 8-205 to 8-208, 8-215 and 8-216 shall apply to jurors and juries in all cases, criminal as well as civil. Seven jurors shall constitute a panel in the trial of misdemeanors, but the jury therefor shall be composed of five. * * * "

The 1950 code commission in codifying the above section followed the example or pattern of the 1919 code in codifying section 4927 by making several sections pertaining to juries in civil cases applicable to juries in criminal cases. These references define who are qualified jurors, who are disqualified, and who are exempt from jury service; and provide for the punishment of those who, after being duly summoned, fail to attend, their compensation and by whom paid, etc. Section 19-181 specifically provides that: "Seven jurors shall constitute a panel in the trial of misdemeanors, but the jury therefor should be composed of five." This mandatory provision is stated in different language in the second paragraph of section 19-183, which reads as follows: "In every case of misdemeanor, whether on an appeal from a trial justice or an original trial, the Commonwealth and the prisoner shall each be allowed one peremptory challenge."

Litigants in civil cases are usually referred to as plaintiff and defendant, and in criminal cases as Commonwealth and defendant, or Commonwealth and accused. Neither of the

latter designations is found in the 1952 amendment. It is inconceivable that the General Assembly, by amending one section of the statute applying to civil cases, should by reference intend to amend two sections applicable specifically to juries in criminal cases. This phase of the question was thoroughly covered in an opinion rendered by the Attorney General on July 7, 1952, soon after the amendment became effective, and with which we are fully in accord, wherein he said:

"It is a well settled rule of statutory construction that repeal by implication is not favored. To hold that the amendment to § 8-200 is applicable to misdemeanor cases would mean that the provisions of § 19-183 are being amended by implication rather than by express amendment and further, that the amendment is not by direct implication but by implication incorporated by reference. It would further mean that the provision of § 19-181 relating to the size of the panel in such cases has necessarily been changed without any express change by the Legislature.

"In my opinion it is clear that it was the intent of the Legislature to change the provision of law relative to peremptory challenges in civil cases and not to make such change in misdemeanor cases. Since the provisions of § 19-181 and 19-183 were not altered, I believe those sections which deal specifically with criminal cases should control in spite of conflicting provisions in a more general statute."

Defendant's second contention is that the court over his objection erroneously permitted the officer who made the arrest to testify that defendant refused to submit to a blood test to determine the amount of alcohol in his system.

The testimony to which defendant objected was admitted while the Commonwealth was examining its witness, E. A. Austin, a member of the State police force. This officer testified that at approximately 11:30 p. m., on August 9, 1952, he saw defendant driving his automobile from side

to side of the two north-bound lanes on U. S. Route 1, approximately two miles north of Colonial Heights. He stopped the defendant and arrested him for driving while intoxicated. Defendant denied that he was intoxicated and asked the officer to reduce the charge to reckless driving, which the officer refused to do. During the course of the conversation at the scene of the arrest and *en route* to a justice of the peace to obtain a warrant, the officer "asked defendant if he would like to submit to a blood test." The defendant refused. After the officer obtained the warrant he took defendant to Chesterfield court house for the purpose of putting him in jail, and while defendant was making numerous telephone calls in an effort to get a bondsman the officer repeated his suggeston, and again defendant refused.

Defendant contends that the admission of this evidence was a violation of that part of section 8 of the Constitution which provides that an accused shall "not be compelled in any criminal proceeding to give evidence against himself."

No pertinent authority is cited in defendant's brief to support this contention. He quotes several broad, general statements found in various textbooks, none of which is pertinent to the specific question here raised. The testimony to which defendant objected was not a statement made by him as a witness in any judicial or *quasi* judicial proceedings. He was not under oath.

Evidence tending to show the attending circumstances of the arrest of an accused, his acts and conduct, his physical and mental condition, and his declarations is pertinent, if such evidence tends to show his guilt. 22 C. J. S., Criminal Law, sec. 628, p. 962.

The defendant was not forced to testify, nor was he compelled to take the stand in his own behalf. The objectionable evidence was given by a witness for the Commonwealth in describing the incidents of the arrest, the

condition of the defendant, and his declarations voluntarily made.

The constitutional inhibition against self incrimination does not apply to evidence of extra-judicial admissions or confessions. The privilege against self incrimination protects a person from any disclosure obtained by legal process against him as a witness. The admissibility of an admission or a confession depends upon the application of a rule of evidence. That is, whether under the circumstances the admission or confession is trustworthy testimony. The two different principles that govern the admission or rejection of evidence tending to incriminate and the admission or rejection of evidence tending to establish an admission or confession, were clearly stated, together with a review of many pertinent authorities, by Mr. Justice Eggleston speaking for the Court in *Owens* v. *Commonwealth*, 186 Va. 689, 43 S. E. (2d) 895, and need not be restated. However, the following extract from that opinion is apropos: "In showing that an accused remained silent in the face of an accusation, he is not thereby compelled 'to give evidence against himself' within the meaning of section 8 of our Constitution. The accused is not testifying, nor is he compelled thereby to take the stand to refute the accusation. The Commonwealth's witness merely details the behavior or conduct of the accused under the circumstances. No one would seriously contend that the Commonwealth could not show that an accused was seen running from the place where a crime had been committed, and yet in a broad sense in doing so he would be giving evidence against himself." 186 Va. 689, at p. 702, 43 S. E. (2d) 895.

The specific question now under consideration was raised and decided adversely to defendant's contention in *State* v. *Gatton*, 60 Ohio App. 192, 20 N. E. (2d) 265. There the defendant was charged with operating a motor vehicle upon the highway while intoxicated. After his arrest a deputy sheriff asked him whether he would submit to a blood test to determine the amount of alcohol in his system. The de-

fendant declined to submit to such a test and the fact that he had refused so to do, over his objection, was admitted in evidence. Defendant contended that the admission of this testimony was a violation of his constitutional right against self incrimination. The Appellate Court in overruling this contention said: "It will be observed in the instant case that the evidence offered was not required to be given by the defendant himself, but was given by the deputy sheriff and the doctor called by the deputy to make the examination of defendant. We are unable to observe any merit in the defendant's claim that the introduction of such evidence violated his constitutional rights, and we believe, and hold, that the constitutional inhibition against self-incrimination relates only, as stated by Greenleaf, to disclosure by utterance. No such disclosure was required of defendant in this case." This decision was cited with approval in *State* v. *Nutt*, 78 Ohio App. 336, 65 N. E. (2d) 675.

The same question was raised in *State* v. *Benson*, 230 Ia. 1168, 300 N. W. 275, 277, where the Court said: "It is proper to show the defendant's conduct, demeanor and statements (not merely self-serving), whether oral or written, his attitude and relations toward the crime, if there was one. These are circumstances that may be shown. Their weight is for the jury to determine. The fact that defendant declined to submit to a blood test is such a circumstance" which a jury may consider. 8 Wigmore on Evidence, 3d ed., Sec. 2268, p. 388, 1953 Pocket Supp., p. 128.

There is no merit in defendant's contention that the admission of the testimony was a violation of his constitutional right against self incrimination.

■ Defendant's third and last contention is that the court committed reversible error in giving, over his objection, the following instruction: "The Court instructs the jury that the phrase 'under the influence of intoxicating beverages' means that a person has voluntarily taken such an

amount of alcoholic beverage as to make him act differently from what he would have done if he had taken none."

The evidence in the case was in sharp conflict. That for the Commonwealth tended to show that defendant was driving his car from side to side across the two north-bound traffic lanes and that when the officer stopped him he got out of the car and staggered. There was an odor of alcohol mixed with garlic on his breath. "His speech was thick." His face was flushed and "his eyes were quite bloodshot."

One witness for the defendant testified that she saw him just a few minutes before he was arrested and several others saw him some time after he was arrested, all of whom said that he appeared quite normal and was not intoxicated. There was no odor of alcohol on his breath; he did not stagger when walking, nor did he show any other evidence of being intoxicated.

Defendant testified that he had just started to wear bifocal glasses, to which he had not become accustomed, and in walking he could not see the ground very well; and that the reflection of headlights tended to blind him.

The definition of the phrase "under the influence of intoxicating beverages" given by the court is too broad and all inclusive and was calculated to mislead the jury. The mere fact that a person reacts somewhat differently from what he would have done if he had consumed no intoxicant is not alone sufficient to prove that he was under the influence of intoxicating beverages. The phrase "under the influence of intoxicants" is composed of words of ordinary significance and their meaning is well known to the average juror, but in the absence of statute the phrase is not susceptible of a definite, accurate definition acceptable to all. Various definitions of "under the influence of intoxicating beverages" and "intoxication" are found in 22 Words and Phrases, pages 435-439, and in the Pocket Part thereto, but none is so all inclusive as the definition given by the trial court in this case.

We said in *Owens* v. *Commonwealth*, 147 Va. 624, at 629, 136 S. E. 765, that "the test to be applied in a prosecution under section 25 (now Code section 18-75), is not merely the ability of the driver to operate the automobile in safety to himself and others, but whether or not he is under the influence of intoxicants at the time he is driving or running an automobile, and this question is one of fact which must be determined by the jury."

There are five separate statutes creating five separate and distinct crimes for acts done while "under the influence" of intoxicants, or "being intoxicated." Section 4-62 provides that it shall be a misdemeanor to sell any alcoholic beverages, among others, to "an intoxicated person." Section 5-10.1 makes it a misdemeanor for any person to operate an aircraft "while under the influence of intoxicating liquor . . . ". Code section 15-553 authorizes the governing bodies of cities, towns and counties to enact ordinances prohibiting drivers of motor vehicles, engines and trains in such towns, "while under the influence of alcohol," etc., and to prescribe fines and other punishment for violation of such ordinances. Section 18-114 provides that if any person "arrived at the age of discretion . . . get or be drunk in a public place he shall be guilty of misdemeanor." Section 18-116 makes it unlawful for any person "being intoxicated" to disturb an assembly met for religious worship.

The General Assembly adopted its own definition of intoxication. It is as follows: "Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated." Code section 4-2(14). This definition if applied in all pertinent cases tends to make the law consistent, uniform, certain, stable, and fair, a much desired goal.

This statutory definition is not as broad and all inclusive

as that given in the instruction to which defendant objected; hence, the instruction was prejudicial to him.

For the reasons stated, the judgment of the trial court is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial.

*Reversed and remanded.*