COURT OF APPEALS OF VIRGINIA

Present: Judges Haley, Petty and Powell
Argued at Salem, Virginia

PAULA MICHELLE RATLIFF

OPINION BY
v.      Record No. 2085-07-3                JUDGE JAMES W. HALEY, JR.
                                            FEBRUARY 24, 2009
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Keary R. Williams, Judge

Robert M. Galumbeck (Galumbeck, Dennis & Kegley, on brief), for
appellant.

Jennifer C. Williamson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.

Code § 18.2-51.4 states in relevant part: "Any person who, as a result of driving *while
intoxicated in violation of § 18.2-266* . . . in a manner so gross, wanton and culpable as to show a
reckless disregard for . . . life, unintentionally causes . . ." serious, permanent bodily injury shall
be guilty of a Class 6 felony. (Emphasis added.) Paula Michelle Ratliff ("Ratliff") entered a
conditional guilty plea to a violation of this statute, preserving for appeal only her contention
that, under the emphasized language, her intoxication must result from alcohol consumption, not
the controlled drugs she admittedly ingested. We reject that contention and affirm.

FACTS

On May 13, 2003, Ratliff drove her vehicle across the centerline of a highway in front of
an on-coming motorcycle, resulting in serious and permanent injury to its operator and a
passenger on the same.

Trooper Gene Crouse of the Virginia State Police arrived on the accident scene. He had arrested Ratliff twelve days earlier for drunk driving. He testified: "[s]he was disoriented the first time I'd arrested her but she was a lot more so this time. . . . She stated that she hadn't taken anything that day, any medication . . . but said she did have trouble maintaining consciousness . . . ."

Ratliff denied she suffered any injury in the accident and was taken to a magistrate's office, where blood was withdrawn. An analysis of her blood, admitted into evidence without objection, showed no evidence of alcohol, but did reveal the presence of benzolyecgonine (a cocaine metabolite), alprazolam (Xanax), and methadone. On brief, Ratliff admits she "[did] have controlled substances (drugs) in her system."

After making a pretrial motion to dismiss the indictment, Ratliff entered a conditional guilty plea to maiming another as a result of driving while intoxicated, reserving her right to appeal the trial court's denial of her pretrial motion to this Court. This appeal followed.

ANALYSIS

Ratliff's argument on appeal presents a pure question of statutory interpretation. This Court reviews the trial court's interpretation of statutes *de novo*. Saponaro v. Commonwealth, 51 Va. App. 149, 151, 655 S.E.2d 49, 50 (2008). Code § 18.2-51.4 provides, in pertinent part:

> A. Any person who, as a result of driving while intoxicated in violation of § 18.2-266 or any local ordinance substantially similar thereto in a manner so gross, wanton and culpable as to show a reckless disregard for human life, unintentionally causes the serious bodily injury of another person resulting in permanent and significant physical impairment shall be guilty of a Class 6 felony.

Code § 18.2-266 reads:

> § 18.2-266. Driving motor vehicle, engine, etc., while intoxicated, etc. — It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by

- 2 -

volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (v) while such person has a blood concentration of any of the following substances at a level that is equal to or greater than:  (a) 0.02 milligrams of cocaine per liter of blood, (b) 0.1 milligrams of methamphetamine per liter of blood, (c) 0.01 milligrams of phencyclidine per liter of blood, or (d) 0.1 milligrams of 3,4-methylenedioxymethamphetamine per liter of blood.  A charge alleging a violation of this section shall support a conviction under clauses (i), (ii), (iii), (iv), or (v).

Ratliff argues that Code § 18.2-51.4 applies only to drivers who cause serious bodily injury to another person resulting in permanent and significant physical impairment as a result of the driver's *alcoholic* intoxication.  According to Ratliff, the definition of intoxicated provided in Title 4.1 of the Code ["a condition in which a person has drunk enough alcoholic beverages to observably affect his manner, disposition, speech, muscular movement, general appearance or behavior," Code § 4.1-100,] and also mentioned in our Supreme Court's decision in Gardner v. Commonwealth, 195 Va. 945, 81 S.E.2d 614 (1954), compels the conclusion that Code § 18.2-51.4 cannot apply to her conduct because the relevant definition applies only to persons who, unlike Ratliff, have consumed alcoholic beverages.  We disagree.

"'[T]wo statutes which are closely interrelated must be read and construed together and effect given to all of their provisions.'"  Meierotto v. Commonwealth, 50 Va. App. 1, 4, 646 S.E.2d 1, 2 (2007) (quoting Zamani v. Commonwealth, 26 Va. App. 59, 63, 492 S.E.2d 854, 856 (1997)).  Code § 18.2-51.4 expressly applies to a person who violates its terms while "driving while intoxicated in violation of § 18.2-266."  Subsection (iii) of Code § 18.2-266 expressly

applies to any person who drives a motor vehicle "while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle . . . ."

"'The plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction . . . .'" Wolfe v. Commonwealth, 43 Va. App. 776, 781, 595 S.E.2d 27, 30 (2004) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424-25 (1992)). Reading Code §§ 18.2-51.4 and 18.2-266(iii) together, as we must, their plain, obvious, and rational meaning is that a person violates Code § 18.2-51.4 when he or she recklessly causes serious bodily injury to another person resulting in permanent and significant physical impairment to that person while operating a vehicle under the influence of any narcotic drug which impairs the driver's ability to operate a motor vehicle in violation of Code § 18.2-266(iii).

The language of Code § 18.2-36.1 supports our conclusion. The section provides, in pertinent part, that: "[a]ny person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 or any local ordinance substantially similar thereto unintentionally causes the death of another person, shall be guilty of involuntary manslaughter." In enacting Code § 18.2-36.1, the legislature decided that violations of certain subsections of Code § 18.2-266, but not other subsections, are punishable as involuntary manslaughter if any of the enumerated violations result in the death of another person. However, Code § 18.2-51.4 applies to violations of Code § 18.2-266 generally; the section's application is *not* limited to particular subsections thereof. When a statute's application is expressly and specifically limited with reference to one subject, the omission of specific limitations from the text of a similar

statute concerning a related subject tends to show the existence of a different legislative intent. See Williams v. Matthews, 248 Va. 277, 284, 448 S.E.2d 625, 629 (1994). In other words, if the legislature had intended to embrace the definition of intoxication suggested by Ratliff, they would have included in the text of Code § 18.2-51.4 language expressly applying that section to violations of Code § 18.2-266(i) only.

The Code, moreover, contains no provision applying the definition of intoxication mentioned in Code § 4.1-100, and relied upon by Ratliff, to Code § 18.2-51.4. This definition is part of Title 4.1 of the Code ("Alcoholic Beverage Control Act"). "Code § 4.1-100 limits its definitions of terms . . . to Title 4.1, applying the provisions of the Alcoholic Beverage Control Act. There is no nexus in statute or case law between the provisions of Titles 4.1 and 18.2 to substantiate the argument to transmorph the definition of non-identical terms in one to the other." Crislip v. Commonwealth, 37 Va. App. 66, 70, 554 S.E.2d 96, 98 (2001) (refusing to limit definition of "in public" for purposes of Code § 18.2-388 ("Profane Swearing and intoxication in public") to the definition of "public place" adopted in Code § 4.1-100). Moreover, by the express terms of Code § 4.1-100, the definitions only apply "unless the context requires a different meaning."

Ratliff argues that, even though *the Code* applies the definition of intoxication mentioned in Code § 4.1-100 to Title 4.1 only, our Supreme Court applied this definition to former Code § 18-75 (now Code § 18.2-266) when it decided Gardner. Because Gardner has never been overruled, the argument continues, that decision's definition of alcoholic intoxication continues to apply to any prosecution under Code § 18.2-266.

In Gardner, the trial court offered the following jury instruction: "The Court instructs the jury that the phrase 'under the influence of intoxicating beverages' means that a person has

- 5 -

voluntarily taken such an amount of alcoholic beverage as to make him act differently from what he would have done if he had taken none." Gardner, 195 Va. at 952-53, 81 S.E.2d at 618. Holding that this definition was too broad, our Supreme Court reversed the defendant's conviction, noting that "[t]he General Assembly adopted its own definition of intoxication. It is as follows: 'Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated.'" Id. at 954, 81 S.E.2d at 619 (quoting § 4-2(14) of the Code of 1950 (currently part of Code § 4.1-100)).

In Gardner, the theory of the Commonwealth was that the defendant violated the law by driving after consuming alcohol. See id. at 953, 81 S.E.2d at 619. None of the evidence from the defendant's trial suggested that he was driving under the influence of other drugs. Moreover, former Code § 18-75, when Gardner was decided, provided as follows:

> § 18-75. Driving automobile, engines, etc., while intoxicated. - No person shall drive or operate any automobile or other motor vehicle, car truck, engine or train while under the influence of alcohol, brandy, rum, whiskey, gin, wine, beer, lager beer, ale, porter, stout or any other liquid beverage or article containing alcohol *or while under the influence of any narcotic drug or other self-administered intoxicant or drug of whatsoever nature.*

§ 18-75 of the Code of 1950 (now Code § 18.2-266) (emphasis added).

The fact that driving under the influence of any narcotic drug was already prohibited at the time of Gardner – and indeed was prohibited by the very statute that the defendant in that case was accused of violating – shows that Ratliff is mistaken with respect to the applicable scope of the definition of intoxication mentioned in Gardner. The success of Ratliff's argument depends on our adopting the view that Gardner applied the definition of intoxication of former Code § 4-2(14) to *all* prosecutions alleging any violation of former Code § 18-75, and thus

embraced an interpretation of the law that effectively nullified the final clause of former Code § 18-75. Put another way, if *any* successful prosecution for driving while intoxicated under former Code § 18-75 required the Commonwealth to prove that the defendant met the definition of *alcoholic* intoxication found in former Code § 4-2(14), then Gardner made a dead letter of the portion of the statutory text that makes it a crime to drive while under the influence of any narcotic drug.

There are three reasons why we do not believe such a broad reading of Gardner is reasonable. First, it is a settled principle of statutory construction that "every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." Hubbard v. Henrico Ltd. Pshp., 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). Ratliff's argument depends on the doubtful premise that our Supreme Court ignored this principle in deciding Gardner and treated as meaningless the clause of former Code § 18-75 concerning drugs. Second, if our Supreme Court really had concluded that Gardner was among the rare cases in which it was "absolutely necessary" to make a nullity of a major part of the statute, we believe the Court would have 1) announced that this is what it was doing and 2) explained its reasons for doing so. Yet the Gardner opinion contains no language suggesting an intention to do either. Finally, the facts of Gardner did not require that our Supreme Court decide whether the definition of intoxication of former Code § 4-2(14) also applied to prosecutions alleging that the defendant drove under the influence of drugs. There was no evidence that the defendant in Gardner had used any drugs, and the only evidence of intoxication at his trial was evidence of alcoholic intoxication. Gardner, 195 Va. at 953, 81 S.E.2d at 619. Because the question presented in this case was not necessary for the resolution of Gardner, a further assumption of Ratliff's argument is that our Supreme Court issued an advisory opinion

when it decided <u>Gardner</u>.  We refuse to make that assumption.  <u>See</u> <u>Commonwealth v. Harley</u>, 258 Va. 216, 219, 504 S.E.2d 852, 854 (1998) (Supreme Court of Virginia traditionally declines to issue advisory opinions).

Accordingly, the trial court did not err in denying Ratliff's motion to dismiss the indictment on the ground that, as a matter of law, her conduct did not violate Code § 18.2-51.4. Because Ratliff entered a conditional guilty plea in the trial court, reserving only her right to appeal the trial court's ruling on her pretrial motion, our holding with respect to that question requires that we affirm her conviction.

<u>Affirmed.</u>