COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and Decker
Argued at Richmond, Virginia

UNPUBLISHED

CORNELLUS LAVON OLIVER

MEMORANDUM OPINION[*] BY
v.        Record No. 0642-14-2        JUDGE WILLIAM G. PETTY
MARCH 10, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Harold W. Burgess, Jr., Judge

Travis R. Williams (Todd M. Ritter; Daniels, Williams, Tuck &
Ritter, on brief), for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Cornellus Lavon Oliver was convicted for driving a motor vehicle while intoxicated, in

violation of Code § 18.2-266. On appeal, Oliver argues: (1) the trial court erred by denying his

motion to suppress, where he was subjected to a warrantless stop unsupported by probable cause or

reasonable suspicion; and (2) the trial court erred in finding sufficient evidence to convict him of

driving under the influence, where the evidence failed to prove guilt beyond a reasonable doubt.

For the following reasons, we affirm the decision of the trial court.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

So viewed, the evidence presented at the suppression hearing established that on May 12, 2012, at approximately 3:42 a.m., Officer McLaughlin of the Chesterfield County Police Department was standing outside of his car while conducting a traffic stop on Route 60, just east of Boulders Parkway. Oliver, traveling southbound on Boulders Parkway, made a left turn onto Route 60, heading east, and passed Officer McLaughlin. The officer testified that Oliver came into the intersection at an excessive rate of speed, accelerated through the turn and then, without signaling, crossed three eastbound lanes of Route 60 before he actually completed his left turn. According to Officer McLaughlin, Oliver was traveling at approximately 45 to 50 miles per hour as he turned onto Route 60 and passed him. The speed limit at that location was 45 miles per hour. The officer testified that he "didn't feel safe" having a vehicle drive by him that fast, so he decided to stop Oliver to investigate "why an individual would drive by a police car with lights on that fast."

Approximately a quarter of a mile from the intersection, Oliver made a right turn onto Granite Springs Road. By the time Officer McLaughlin caught up with Oliver, he had parked his car, gotten out, and was standing beside it.[1] At that point, Officer McLaughlin asked Oliver if he had had anything to drink and Oliver admitted having had "two liquor shots just prior to our encounter." The officer then began to conduct an investigation to determine if Oliver was driving while intoxicated.

---

[1] The record does not establish that the officer had turned his emergency lights on prior to approaching Oliver.

First, Oliver did a one-leg stand test. He had to stand on one foot, holding the other six inches off the ground while counting to thirty. Officer McLaughlin testified that Oliver swayed back and forth all the while he performed the test and that he had to drop his foot to the ground four times throughout the test. During the nine-step walk-and-turn test, where Oliver was supposed to walk heel-to-toe, one foot in front of the other for nine steps, Oliver dragged his feet, swayed while he walked, and walked in a diagonal instead of a straight line. Officer McLaughlin then asked Oliver to say the alphabet from the letter F to the letter O. Oliver answered, "F, T, U, W, X, Y, Z."[2] When asked to countdown backwards from 69 to 53, Oliver was nearly successful, only missing the number 60. The fifth test Oliver performed was a finger dexterity test. In that test, Oliver had to use one hand and press his fingertips against his thumb in a series, counting up to four then down from four to one. On his third time through the series, Oliver did number three twice. Officer McLaughlin then administered the HGN test.[3]

As a result of what he observed of Oliver's performance and behavior, Officer McLaughlin arrested Oliver for driving under the influence. Before trial on that charge, Oliver made a motion to suppress the evidence from the field sobriety test, arguing that the officer did not have a reasonable suspicion to stop Oliver in the first place. After a hearing on the motion, the trial court denied it. Oliver appealed that ruling as well as the trial court's finding that the evidence was sufficient to convict Oliver of driving while intoxicated.

---

[2] Officer McLaughlin testified that prior to administering the test, he asked Oliver the extent of Oliver's education. Oliver answered that he "had a twelfth grade education."

[3] No evidence was presented to explain the meaning of "HGN."

II.

A. Motion to Suppress

First, Oliver argues that the trial court erred by denying his motion to suppress because he was subjected to a warrantless stop unsupported by probable cause or reasonable suspicion. Concluding that at the time Oliver was actually seized the officer had a reasonable suspicion that Oliver might be intoxicated, we disagree.

The standard of review for a ruling denying a motion to suppress for violation of a person's Fourth Amendment rights is well-settled: "'The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.'" McGhee v. Commonwealth, 280 Va. 620, 623, 701 S.E.2d 58, 59 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009)).

"Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a police officer 'may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" Beasley v. Commonwealth, 60 Va. App. 381, 395, 728 S.E.2d 499, 505 (2012) (quoting Bass v. Commonwealth, 259 Va. 470, 474-75, 525 S.E.2d 921, 923 (2000)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" Id. (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). "'In determining whether an articulable and reasonable suspicion justifying an investigatory stop of a vehicle exists, courts must consider the totality of the circumstances—the whole picture.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (quoting Murphy v. Commonwealth, 9 Va. App. 139, 143-44, 384 S.E.2d 125, 127 (1989)). Furthermore, a police officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances,

viewed objectively, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006)

(quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

Viewed as a whole, the evidence presented at Oliver's suppression hearing[4] demonstrates

that Officer McLaughlin had reasonable, articulable suspicion to believe that Oliver was driving

while under the influence of alcohol, justifying Officer McLaughlin's decision to detain him for

purposes of requiring Oliver to perform field sobriety tests.[5] From where Officer McLaughlin

---

[4] We recognize that there was additional evidence regarding the stop presented at trial. Generally, when affirming a trial court's denial of a pre-trial motion, it is appropriate for this Court to consider evidence presented at both the motion hearing and at trial. See Emerson v. Commonwealth, 43 Va. App. 263, 272, 597 S.E.2d 242, 247 (2004). However,

> [a]s an appellate basis for reversing a pretrial [motions] ruling, . . . evidence at trial becomes relevant only if the defendant renews his motion at trial. "[T]he fact a pretrial motion has been denied is no reason for not renewing the motion during the course of the trial." 5 Wayne R. LaFave, Criminal Procedure § 17.3(d), at 57 (3d ed. 2007). Only by doing so does the defendant invite the trial court to reconsider its pretrial ruling in light of the actual evidence presented—rather than merely relying (as the trial court ordinarily must when deciding the issue prior to trial) solely upon the charging documents and the pretrial [evidence or] proffers of the parties.

Allen v. Commonwealth, 58 Va. App. 618, 621, 712 S.E.2d 748, 749 (2011). Because Oliver did not renew his motion to suppress after the additional evidence was presented, we will consider only the facts presented at the suppression motion hearing upon which the trial judge relied in his decision.

[5] Neither of the parties argued, nor did the trial court make a finding, as to when a seizure, for purposes of the Fourth Amendment, occurred. Not all police encounters implicate the Fourth Amendment. In fact, consensual encounters, whether they involve questioning or searches, simply "do not implicate the Fourth Amendment." McGhee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261(1997) (en banc). The test to determine whether there has been a seizure is well-settled: "If . . . a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment." Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003). "[T]he question whether a person has been seized in violation of the Fourth Amendment is reviewed *de novo* on appeal." Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000). Here, there was no evidence presented at the suppression hearing suggesting that the officer did anything other than engage in a consensual encounter when he approached Oliver after Oliver had gotten out of his car. Thus, in our *de novo* review, viewing

was standing as he was conducting a traffic stop, he saw Oliver's car accelerate through the intersection and come within only fifty feet of where the officer was standing outside the protection of his police cruiser. As he made the turn, Oliver crossed three lanes of traffic without signaling. In fact, Oliver's turn onto Route 60 east from Boulders Parkway was more like a straight line than a turn, cutting directly to the farthest right lane of Route 60 eastbound traffic and failing to maintain his dedicated turn lane.[6] The officer described Oliver's speed as "excessive" for the turn.

Although Officer McLaughlin testified to having a number of reasons to support his decision to investigate Oliver's intoxication level, including Oliver's speed, failure to signal, admission that he had taken shots of liquor, and Officer McLaughlin feeling himself to be in danger, it is not the subjective viewpoint of the officer that we evaluate. See Stuart, 547 U.S. at 404 (A police officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" (quoting Scott, 436 U.S. at 138)). Therefore, it is not necessary that all of Officer McLaughlin's stated reasons for investigating Oliver are justified. What matters is that we, in viewing the evidence objectively as a whole, can point to circumstances that justified the officer's action. Here, Oliver's acceleration through the turn, failure to remain in his designated turn lane,

_____

the evidence in the light most favorable to the Commonwealth, we find that the seizure occurred when the officer required Oliver to perform a series of field sobriety tests. This occurred after Oliver admitted he had consumed alcohol.

[6] We note here that Code § 46.2-846 mandates,

> [a]n approach for a left turn shall be made from the right half of the roadway and as close as possible to the roadway's center line, passing to the right of the center line where it enters the intersection. After entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable, the left turn shall be made to the left of the center of the intersection.

failure to use his turn signal, and then admission that he had two shots of liquor just prior to the encounter provided the officer a sufficient objective basis to seize Oliver by requiring him to perform field sobriety tests.

## B. Second Assignment of Error

Next, Oliver argues that the trial court erred in finding sufficient evidence to convict him of driving under the influence, where the evidence failed to prove guilt beyond a reasonable doubt. We disagree.

The appellate standard of review for sufficiency of the evidence is well established. "'[T]he judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict.'" Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991) (quoting Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975)). Thus, we presume the trial court's judgment to be correct and reverse only if its decision is "'plainly wrong or without evidence to support it.'" Davis v. Commonwealth, 39 Va. App. 96, 99-100, 570 S.E.2d 875, 876-77 (2002) (quoting Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)); see Code § 8.01-680.

Oliver alleges that his performance on the field sobriety tests was, "at worst, mixed." He claims that any mishaps in his performance were minor and that there was no evidence to put his performance in context. According to Oliver, the Commonwealth failed to demonstrate how a sober individual would have performed on the tests.

Code § 18.2-266 provides,

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol . . . .

Because the Commonwealth did not have a breath or blood test to submit into evidence, Oliver was prosecuted under subsection (ii) of the statute. Code § 18.2-266(ii) prohibits driving "while such person is under the influence of alcohol." "That degree of intoxication, or being 'under the influence of alcohol,' is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" Thurston v. Lynchburg, 15 Va. App. 475, 483, 424 S.E.2d 701, 705 (1992) (quoting Gardner v. Commonwealth, 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954)).

Based upon the evidence in this record, a rational trier of fact could have found that Oliver was operating his vehicle while under the influence of alcohol. Simply put, we cannot say that no rational trier of fact could have concluded—given Oliver's suspicious driving behavior through the Route 60 intersection; his admission that he had two shots of liquor "prior" to driving; the strong odor of alcohol; his bloodshot eyes; his failure to hold his foot off the ground during the one-leg stand without dropping it down four times; his inability to do the walk-and-turn without swaying, walking in a diagonal line, or dragging his feet; and his demolition of the alphabet—that Oliver had consumed enough alcohol to "'affect his manner, disposition, speech, muscular movement, general appearance or behavior.'" Id. (quoting Gardner, 195 Va. at 954, 81 S.E.2d at 619). See Fierst v. Commonwealth, 210 Va. 757, 760, 173 S.E.2d 807, 810 (1970) (holding officer had probable cause for an arrest based on suspect's posture, fumbling, appearance, and manner of exiting his car, although the officer detected no odor of alcohol and did not conduct any field sobriety tests). The trial court's decision was not plainly wrong or without evidence to support it.

Accordingly, we hold that the trial court did not err in finding appellant guilty of driving while intoxicated, in violation of Code § 18.2-266.

III.

For the reasons stated above, we affirm the decision of the trial court.

<u>Affirmed.</u>