COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Judges Fulton, Ortiz and Senior Judge Petty
Argued at Lexington, Virginia


MICHAEL CHARLES HOGLE

OPINION BY
v.    Record No. 0027-22-3    JUDGE WILLIAM G. PETTY
NOVEMBER 15, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

Jennifer T. Stanton, Senior Assistant Public Defender (Indigent
Defense Commission, on briefs), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Michael Charles Hogle for driving while

under the influence (DUI) in violation of Code § 18.2-266 and sentenced him to twelve months in

jail, all suspended. Hogle argues that the trial court erred in denying his motion to suppress the

evidence because the police obtained it in violation of Code § 46.2-646(E). He contends that

subsection (E) of Code § 46.2-646, which took effect in March 2021, applied retroactively and

rendered inadmissible the evidence the police seized in 2019. He further contends that the evidence

was insufficient to support his conviction. We affirm the judgment because we conclude that the

trial court did not err in denying the motion to suppress or finding the evidence sufficient to sustain

Hogle's conviction.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Hogle's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

On September 10, 2019 at 3:48 p.m., Virginia State Police Trooper Savannah Stagner saw Hogle driving a car in Augusta County and noticed that the vehicle registration was expired. After running Hogle's license plate to confirm the expiration, she stopped Hogle for that reason at 3:51 p.m.

Hogle, who was alone in the car, did not have his driver's license, but he provided the trooper with his social security number. Trooper Stagner noticed numerous orange prescription drug bottles in the car, and smelled alcohol on Hogle's breath. When the trooper asked how much he had had to drink that day, Hogle said that he took "several" shots of tequila at "around 12:30" p.m. He said that he had not been feeling well for the last few days, had gone to work that day but left early, and took the shots of tequila after he got home to help him sleep. Hogle claimed he had consumed no more alcohol since then.

Trooper Stagner asked Hogle if he had any medical conditions. Hogle replied that he took Adderall for depression and that he had been sick. Trooper Stagner administered a series of field sobriety tests.[1] When the trooper conducted the horizontal gaze nystagmus test, she observed that Hogle's eyes were bloodshot, that "he had equal pupil size and equal tracking and that he did demonstrate a lack of smooth pursuit and distinct and sustained nystagmus at maximum deviation."[2] After Trooper Stagner demonstrated the "walk-and-turn" test and

_____

[1] While referred to in the record as "tests," in reality they are tasks that demonstrate physical indications of intoxication.

[2] The record does not indicate what a horizontal gaze nystagmus test entails or why the trooper's observations were relevant to the question of Hogel's intoxication.

confirmed that Hogle understood the instructions, he swayed on the first few steps of the test, stepped offline, missed heel to toe placement on steps three and four, and executed the turn improperly by moving both feet. Finally, Trooper Stagner had Hogle perform the "one-leg stand" test. Trooper Stagner testified that Hogle "really didn't follow any of the instructions" for the test. He failed to keep his raised foot below six inches, held the raised foot pointed rather than parallel to the ground, and did not count as Trooper Stagner had instructed him. After Hogle completed a preliminary breath test, the trooper arrested him at 4:04 p.m.

In a search of Hogle's car, the police found empty fifty-milliliter bottles of Fireball whisky. The empty liquor bottles and medication bottles were concentrated in the passenger side floorboard and the center console of the vehicle. A glass smoking device and a container with marijuana residue also were in the car. Hogle consented to a blood test, and a sample of his blood was drawn at 4:53 p.m.

Dr. James Kuhlman, an expert in the field of forensic toxicology, tested Hogle's blood sample. Hogle's blood contained a blood alcohol concentration (BAC) of 0.069%, an amphetamine concentration of 0.19 milligram per liter, a THC concentration of 0.0036 milligram per liter, and a THC carboxylic acid concentration of 0.025 milligram per liter. Kuhlman opined that alcohol is a nervous system depressant that can slow a person's reaction times and affect coordination. Amphetamine, a drug that is often prescribed for people with attention deficit disorder, is a stimulant that may help such patients focus. Kuhlman stated that "someone who has been taking the drug for an extended period of time under a doctor's prescription most likely will develop tolerance" to associated side effects. Kuhlman explained that THC is the active compound found in marijuana and can cause euphoria and diminished ability to concentrate or to focus. THC "does not last very long in the body," and "the THC level goes below the limits of

detection within four to six hours" of smoking marijuana. THC carboxylic acid is produced when THC is metabolized in the body.

Kuhlman stated that most people eliminate a little less than one shot of alcohol from the body per hour. Kuhlman explained that most of the absorption of alcohol occurs within the first hour it is ingested. Thus, the level of alcohol "may or may not plateau" until two hours after ingestion. Kuhlman further stated, "Once you reach the two-hour time period after the ingestion of alcohol your body is eliminating the alcohol and it eliminates at a line[a]r rate that's very predictable[.]" Consequently, two hours after ingestion, the body enters an "elimination phase" and eliminates alcohol at a rate of 0.1 to 0.25% per hour. Applying retrograde extrapolation, Kuhlman opined that a BAC of 0.069 at 4:53 p.m., when Hogle's blood sample was collected, with the final drink consumed at 12:30 p.m., translated into a BAC range of 0.08 to 0.096% at 3:48 p.m., the time the trooper first saw Hogle driving. Kuhlman admitted that Adderall and alcohol could possibly counteract the effects of the other substance.

Testifying on his own behalf, Hogle, a previously convicted felon, said that he was not feeling well at the time of the stop. He had taken prescribed Adderall three times per day for the past fifteen years. Hogle did not eat on the day Trooper Stagner stopped him because of nausea.

Code § 46.2-646(E), which took effect on March 1, 2021, provides that "[n]o law-enforcement officer shall stop a motor vehicle due to an expired registration sticker prior to the first day of the fourth month after the original expiration date." *See* 2020 Va. Acts, Spec. Sess. I., chs. 45, 51. The subsection further states, "No evidence discovered or obtained as the result of a stop in violation of this subsection, including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding." *See id.*

The trial court conducted a pretrial hearing on Hogle's motion to suppress the evidence claiming that the search and seizure of his vehicle violated Code § 46.2-646(E). After initially

taking the matter under advisement, the trial court denied the motion to suppress, reasoning that the amendment to Code § 46.2-646(E) contained both substantive and procedural elements and could not practically be applied retroactively to Trooper Stagner's actions, which occurred before the effective date of the statutory amendment.

At the conclusion of the evidence, the trial court rejected Hogle's argument that the Commonwealth had failed to prove intoxication beyond a reasonable doubt. The trial court considered the "overall picture" in the case, concluded that Hogle should not have been "driving with those three drugs in his system," and noted that his blood test occurred when the percentage of alcohol in his blood was diminishing. Accordingly, the trial court found the evidence sufficient to prove appellant was intoxicated when he was driving and convicted him of violating Code § 18.2-266. Hogle appeals.

ANALYSIS

I.

Hogle contends that the trial court improperly applied statutory retroactivity principles and, as a result, erroneously denied his motion to suppress the evidence.

"When challenging the denial of a motion to suppress on appeal, the defendant bears the burden of establishing that reversible error occurred." *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). "Whether a statute should be applied retroactively is . . . a question of law that an appellate court reviews *de novo*." *Id.* at 304.

Hogle argues that the amendment to Code § 46.2-646 in 2021 adding subsection (E) was purely a change in procedure that applied retroactively. "The 'usual rule' regarding a new statute is 'that legislation is . . . prospective' only." *Id.* at 305 (quoting *Martin v. Hadix*, 527 U.S. 343, 357 (1999)). "The retroactivity of statutes is disfavored." *Id.* (citing *McCarthy v.*

*Commonwealth*, 73 Va. App. 630, 647 (2021)). "A statute is retroactive only if the legislature includes an express provision or other clear language indicating that it applies retroactively." *Id.* "In fact, '[e]very reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong[,] and imperative that no other meaning can be annexed to them . . . .'" *Id.* (quoting *Taylor v. Commonwealth*, 44 Va. App. 179, 185 (2004)).

This Court recently examined retroactivity principles in cases relating to changes in Virginia law prohibiting a stop or seizure based solely upon the odor of marijuana. Like Code § 46.2-646(E), the statute under review in *Street* provided that any evidence obtained as a result of such an illegal stop or seizure was inadmissible in court. *See id.*; *Montgomery v. Commonwealth*, 75 Va. App. 182 (2022). In *Montgomery*, we found that Code § 18.2-250.1(F), which has since been repealed, did not apply to a search that the police conducted before the effective date of the subsection. 75 Va. App. at 200. Likewise, we concluded in *Street* that in enacting Code § 4.1-1302(A), which contained the same legal principles as Code § 18.2-250.1(F), "the General Assembly provided clear instruction that the accompanying exclusionary provision applies only prospectively." 75 Va. App. at 310.

The addition of subsection (E) to Code § 46.2-646 did two things. First, Code § 46.2-464(E) prohibits law enforcement officers from stopping a motor vehicle for an expired registration sticker under certain circumstances. Second, it provides an exclusionary remedy for a violation of the seizure provision: "[n]o evidence discovered or obtained as a result of a stop *in violation of this subsection*, including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding." Code § 46.2-646(E) (emphasis added).

In this case, even if the stop of Hogle's car based upon an expired registration would be unlawful under the current Code § 46.2-646(E), that provision did not take effect until March 1, 2021. When Trooper Stagner stopped Hogle in September of 2019, the evidence discovered or obtained was not "the result of a stop in violation of th[e] subsection" "because one cannot violate a statute or break a rule that does not exist. Because the [subsection] was not in effect at the time of the search, no law enforcement officer could have violated it." *Montgomery*, 75 Va. App. at 196.

Just as we concluded in *Montgomery*, the illegal seizure prong of Code § 46.2-646(E) "is not procedural as it is completely silent on the method of obtaining redress or the enforcement of the right it creates; instead, the scope of the entire [subsection] is both substantive and procedural." *Id.* at 199. The seizure provision "created a statutory right to be free from" certain police encounters with citizens "for which the evidentiary rule in turn provide[s] a remedy." *Id.* Thus, the seizure prohibition in Code § 46.2-646(E) "is a substantive change in the law and cannot be applied retroactively to render" the stop of Hogle's car illegal, because "the evidentiary prong of the statute, though procedural, is only triggered by a . . . seizure that violated the substantive portion of the statute." *Id.*

The exclusionary provision of Code § 46.2-646(E) thus did not entitle Hogle to the suppression of the evidence obtained and discovered as a result of the stop of his vehicle in 2019 because the subsection, by its express terms, did not apply retroactively to the time of the stop. Accordingly, we do not disturb the trial court's ruling on Hogle's motion to suppress.

II.

Hogle also argues that the trial court erred in finding the evidence sufficient to sustain his conviction for DUI. He contends that the evidence did not prove that the combined influence of

drugs and alcohol impaired his ability to drive. He further maintains that "the trial court used an improper legal standard in determining [his] guilt."

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Under Code § 18.2-266, "[i]t shall be unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of alcohol[.]" The statute also prohibits driving or operating a motor vehicle while "under the influence of any . . . self-administered intoxicant or drug . . . , or any combination of such drugs, to a degree which impairs [that person's] ability to drive or operate" a motor vehicle safely. *Id.* Under Code § 18.2-269(A)(2), if a suspect's blood test after an arrest for DUI reflects a BAC

> in excess of 0.05 percent but less than 0.08 percent by weight by volume . . . such facts shall not give rise to any presumption that the accused was or was not under the influence of alcohol intoxicants at the time of the alleged offense, *but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused*[.]

(Emphasis added).

> [T]he thrust of the statutory scheme is to prohibit drinking and driving where the driver's ability is impaired to operate safely a motor vehicle. That degree of intoxication, or being "under the

influence of alcohol," is established when any person has consumed enough alcoholic beverages to "so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation."

*Thurston v. City of Lynchburg*, 15 Va. App. 475, 483 (1992) (quoting *Gardner v. Commonwealth*, 195 Va. 949, 954 (1954)). In determining whether a defendant was under the influence, a factfinder considers "all of the evidence of his condition at the time of the alleged offense." *Leake v. Commonwealth*, 27 Va. App. 101, 109 (1998) (quoting *Brooks v. City of Newport News*, 224 Va. 311, 315 (1982)). This Court has found that "[a] defendant's admission that he consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol." *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995) (citing *Wheeling v. City of Roanoke*, 2 Va. App. 42, 44 (1986)).

Based upon the totality of evidence in this record, a rational finder of fact could have found beyond a reasonable doubt that Hogle was operating his vehicle while under the influence of alcohol or a combination of alcohol and drugs. Hogle's BAC registered 0.069 slightly more than an hour after the trooper saw him driving. Using retrograde extrapolation, Kuhlman opined that Hogle's BAC when he was driving was between 0.08 and 0.096. While Hogle's BAC of 0.069 at 4:53 p.m. did not give rise to a presumption that he was under the influence of alcohol, the trial court was entitled to consider the BAC along with other competent evidence. *See* Code § 18.2-269(A)(2). Hogle admitted consuming "several" shots of tequila earlier in the day, and there were empty mini-bottles of liquor in his car. Trooper Stagner noted the odor of alcohol on Hogle's breath, his bloodshot eyes, his inability to perform the walk-and-turn test correctly, and his failure to follow any of the instructions on the one-leg test.

In addition, Hogle's blood contained a measurable level of THC, which can diminish the ability to concentrate or focus and dissipates quickly in the body after smoking marijuana. A container with marijuana residue and a smoking device were in Hogle's car.

Considering all of these facts and circumstances, a reasonable finder of fact could conclude that Hogle had consumed enough alcohol, or a combination of drugs and alcohol, to "affect his manner, disposition, speech, muscular movement, general appearance or behavior." *Thurston*, 15 Va. App. at 483. Accordingly, we find that the trial court did not err in finding Hogle guilty of DUI in violation of Code § 18.2-266.

Asserting that the trial court applied an improper legal standard, Hogle states that "[t]he trial court's determination of guilt in this case was that it did 'not think he should be driving with those three drugs in his system.'" After the trial court pronounced judgment, Hogle did not object or assert that the court had applied an incorrect legal standard.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009).

Hogle does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). Accordingly, Rule 5A:18 bars our consideration of this aspect of Hogle's argument on appeal.

## CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying the motion to suppress and finding that the evidence was sufficient to prove Hogle's guilt beyond a reasonable doubt. Accordingly, we affirm the judgment.

*Affirmed.*